**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re ApolloMD Data Breach Litigation, | No. 1:25-cv-05439-SEG |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS WITH INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure Rule 23(e), Lee Flint, Shawanna Townsend, Paul Bruni, Cathy O'Donnell, Cynthia Hall, Sarah Inman, Evelyn Adams, Lauren McEntee, Pamela Govan, Dominique Williams, and Carita Matthews, ("Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully move the Court for preliminary approval of the proposed settlement of this class action. Unless otherwise stated, all capitalized terms and definitions herein are the same as in the Settlement Agreement ("S.A."), attached hereto as **Exhibit A**.

**SUMMARY OF THE SETTLEMENT**

Plaintiffs and the proposed Class have reached a nationwide class action settlement with Defendant ApolloMD Business Services, LLC ("ApolloMD" or "Defendant", for an all-cash $4,020,000.00 ***non-reversionary*** common fund to resolve claims arising from the data security incident wherein an unauthorized third party accessed Defendant's Information Technology environment between May 22,

2025 and May 23, 2025, and may have accessed and/or acquired files that contained Private Information of approximately 662,000 individuals (the "Data Incident"). *See* Joint Declaration of Class Counsel Supporting Unopposed Motion for Preliminary Approval ("Joint Decl.") attached hereto as **Exhibit B** ¶¶ 3-4; *see also* S.A. The Settlement provides significant relief to Settlement Class Members and is well within the range of reasonableness for this Court to grant preliminary approval under Rule 23(e). The Court should: preliminarily approve the Settlement; direct that notice be sent to all Settlement Class Members; set deadlines for exclusions, objections, and briefing on Plaintiffs' Motion for Final Approval and petition for attorneys' fees and expenses; and set a date for the Final Approval Hearing.

## I. BACKGROUND

### A. History of Litigation

Between May 22, 2025 and May 23, 2025, an unauthorized third party accessed Defendant's Information Technology environment and may have accessed and/or acquired files containing Private Information for patients treated by Defendant's affiliated physicians and practices (the "Affiliated Healthcare Providers"). Following the Data Incident, Defendant caused notice to be sent to individuals whose Private Information may have been impacted in the Data Incident. Between Defendant's first round of notice beginning in September 2025 and its second round of notice beginning in March 2026, approximately 662,000 individuals

in total will have been notified of the Data Incident.

On September 23, 2025, Plaintiff Lee Flint filed the first class action lawsuit against Defendant related to the Data Incident, seeking relief for all people who were impacted in the Data Incident. [*See* Doc. 1]. Thereafter, Plaintiffs Townsend, Bruni, and Odonnell each filed class action lawsuits containing similar claims to those of Plaintiff Flint. Counsel for these plaintiffs then conferred and agreed to consolidate the related actions and work cooperatively. On October 3, 2025, Plaintiff Flint filed a Motion to Consolidate Actions, Appoint Interim Class Counsel, and Set Deadline for Filing of Consolidated Complaint. [Doc. 6]. On January 20, 2025, the Court granted the motion to consolidate and appointed Jeff Ostrow and Casondra Turner as Interim Co-Lead Class Counsel. [Doc. 12]. During the same timeframe, several related actions (the "Related Actions") were filed throughout the country against the Affiliated Healthcare Providers concerning the Data Incident. (*See* S.A. ¶ 59).

Following consolidation, the Parties began discussing potential resolution of the litigation and agreed to conserve resources and explore resolution of the entire action. The Parties scheduled a mediation with experienced class action mediator Steven Jaffe, Esq. of Upchurch Watson White & Max. In anticipation of the mediation, the Parties moved to stay all proceedings pending the outcome of mediation. *See, e.g.*, Doc. 41.

**B. Negotiations and Settlement**

This Settlement is the result of arm's-length negotiations. Before mediation, the Parties exchanged informal discovery, including, but not limited to, information about the allegations in the Complaint, the class size, the types of data impacted in the Data Incident, and information supporting Plaintiffs' damages allegations. Joint Decl. ¶¶ 13-14. The parties also exchanged detailed mediation briefing discussing the strengths and weaknesses in their positions. *Id*. OnJanuary 30, 2026, the Parties participated in a full-day mediation with Steven Jaffe, Esq. of Upchurch Watson White & Max, who has vast experience mediating similar data breach cases. *Id*. ¶¶ 15, 23. After exchanging a series of offers and demands during the mediation sessions, the Parties resolved the matter for an all-cash, non-reversionary common fund settlement of $4,020,000.00. This Settlement would resolve all claims related to the Data Incident on behalf of the Settlement Class. *See Id*. ¶ 16.

### C. Summary of Settlement Terms

The Settlement Agreement defines the Settlement Class as follows:

> All individuals residing in the United States who were sent notice that their Private Information may have been impacted by the Data Incident.

S.A. ¶ 66. Under the proposed Settlement, Defendant will pay $4,020,000.00 to establish the Settlement Fund. S.A. ¶ 72. The Settlement Fund will be used to pay all Administration and Notice Costs, Fee Award and Expenses, CAFA Notice costs, and all Settlement Class Member Benefits. *Id*. Settlement Class Members may make claims for (i) reimbursement of Documented Losses up to $5,000.00 per individual,

or (ii) a pro rata alternative cash payment estimated at $75.00; and (iii) medical data monitoring. *Id.* ¶¶ 76(a)-(c).

**1. Settlement Benefits**

**a. Reimbursement of Documented Losses**

All Settlement Class Members may submit a Claim Form for reimbursement of Documented Losses up to $5,000 per individual. S.A. ¶ 76(a). Documented Losses may include extraordinary unreimbursed losses relating to fraud or identity theft that were incurred on or after the Data Incident through the date of claim submission. *See id.* Settlement Class Members with Documented Losses must submit documentation supporting their Claims. *Id.*

**b. Alternative Cash Payment**

In the alternative to making a claim for Documented Losses, all Settlement Class Members may elect to receive an Alternative Cash Payment, which is a pro rata cash payment in the estimated amount of $75.00. S.A. ¶ 76(b).

**c. Credit Monitoring**

Settlement Class Members are also eligible to claim one year of CyEx's medical data monitoring, which will include: (i) real time monitoring of the credit file with one credit bureau; (ii) dark web scanning with immediate notifications; (iii) security freezing assistance; (iv) victim assistance; (v) $1,000,000.00 in identity theft insurance with no deductible; and (vi) access to fraud resolution agents to help investigate and resolve instances of identity theft. S.A. ¶ 76(c).

**d. Data Security Investments**

Defendant has provided confidential information to Class Counsel outlining updates to Defendant's cybersecurity technology and practices since around the time of the Data Incident. Joint Decl. ¶ 35. None of the costs associated with the development and implementation of these updates has been or will be paid by the Settlement Class Representatives or the Settlement Fund. *Id.*

**2. Scope of the Release**

The scope of the release is defined as follows:

> Upon the Effective Date, and in consideration of the Settlement relief and other consideration described herein, the Releasing Parties shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever released, acquitted, relinquished, and completely discharged Defendant from any and all Released Claims.

S.A. ¶ 109. Upon the Effective Date: (a) this Settlement shall be the exclusive remedy for any and all Released Claims of Plaintiffs and Settlement Class Members; and (b) Plaintiffs and Settlement Class Members shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting all Released Claim, whether on behalf of Plaintiffs, any Settlement Class Member or others, in any jurisdiction, including in any federal, state, or local court or tribunal. *Id.* ¶ 113.

**3. The Notice and Settlement Administration Plans**

Under the Settlement Agreement, Class Counsel, with Defendant's approval, has selected Kroll Settlement Administration, LLC ("Kroll") to be the Settlement Administrator, which will provide the Settlement Class with notice and administer

the claims. Understanding that any settlement administration costs and expenses will be deducted from the Settlement Fund, Class Counsel's decision to select Kroll was based on the scope and quality of settlement administration services balanced against their cost. Joint Decl. ¶¶ 50-51.

Kroll shall administer various aspects of the Settlement, including, but not limited to, carrying out the Notice Plan and administering the claims and Settlement Fund distribution process. S.A. ¶ 79. Within 30 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Plan. *Id.* ¶ 82. The Long Notice and Short Notice shall include, *inter alia*: a description of the material terms of the Settlement; how to submit a Claim Form; the Claims Deadline; the Opt-Out Deadline; the Objection Deadline; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. *See* S.A. ¶¶ 83, 85, Exhibits 1-2. The Settlement Administrator will establish the Settlement Website and ensure it makes available the Court-approved online Claim Form, which can be submitted directly on the Settlement Website or in a printable version that can be sent by U.S. Mail to the Settlement Administrator. S.A. ¶ 84.

**4. Attorneys' Fees and Expenses**

Class Counsel shall request the Court to approve an award of attorneys' fees not to exceed one-third (33.33%) of the Settlement Fund plus reasonable litigation

expenses. S.A. ¶ 106. Class Counsel shall submit their Petition for Fee Award and Expenses no later than 45 days following Notice Commencement. *Id.* ¶ 104.

## II. LEGAL STANDARD

Under Fed. R. Civ. P. 23(e), a class action may be settled only with court approval, which requires the court to find the settlement "fair, reasonable, and adequate." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021). Fed. R. Civ. P. 23(e) provides three steps for the approval of a proposed class action settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable, and adequate.

At the preliminary approval stage, the court must determine whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), in turn, specifies the following factors the court should consider at the final approval stage in determining whether a settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Courts generally consider whether the proposed class settlement "is within the range of possible approval." *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 11, 2007) (internal citations omitted). Generally, a large amount of discretion is afforded to courts in approving class action settlements, and the Eleventh Circuit has held the "degree of deference to a decision approving a class action settlement makes sense . . . [S]ettlements resolve differences and bring parties together for a common resolution." *In re Equifax*, 999 F.3d at 1273 (internal citations omitted). In exercising its discretion, courts may rely upon the strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). For the reasons here, Plaintiffs request that the Court preliminarily approve the proposed Settlement in accordance with Fed. R. Civ. P. 23(e).

# III. ARGUMENT

## A. Certification of the Settlement Class is Appropriate

First, the Court should certify a settlement class. *See* Fed. R. Civ. P. 23(e)(1)(B). Certification requires Plaintiffs to satisfy all of the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and one of the requirements of Rule 23(b). Here, Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3), because common questions of law or fact for plaintiffs' claims predominate over any individual issues and the class action mechanism is the superior method efficiently handling the case. Fed. R. Civ. P. 23(b)(3). As discussed below, these requirements are met here for settlement purposes.

### 1. Numerosity

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). "There is no specific number below which class action relief is automatically precluded . . . [t]o demonstrate numerosity, "plaintiffs need not prove that joinder is impossible; rather, plaintiffs 'need only show that it would be extremely difficult or inconvenient to join all members of the class.'" *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 557 (N.D. Ga. July 20, 2007). Here, the joinder of approximately 3,700,000 Settlement Class Members would be impracticable, and numerosity is easily satisfied.

**2. Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).

Here, the claims turn on whether Defendant's security environment was adequate to protect Settlement Class Members' Private Information. The resolution of that inquiry revolves around evidence that does not vary from Class Member to Class Member, and can be fairly resolved—at least for settlement purposes—for all Settlement Class Members at once. In the context of cybersecurity incident class actions, these issues satisfy commonality. *In re Equifax*, 2020 WL 256132, at *11 (N.D. Ga. Mar. 17, 2020) (citing *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016)) (finding that multiple common issues center on the defendant's conduct, satisfying commonality).

**3. Typicality**

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. In the *Equifax* MDL, Judge Thrash found that the typicality requirement had been met

as "[t]he claims are also based on the same overarching legal theory that [Defendant] failed in its common-law duty to protect their personal information." *In re Equifax*, 2020 WL 256132, at *12. Here, the claims all involve IMS's conduct toward the Settlement Class Members and Plaintiffs' and the Class's claims are based on the same legal theories. Thus, Plaintiffs' claims are typical of those of the Settlement Class, and for purposes of settlement, they are appropriate Class Representatives.

**4. Adequacy of Representation**

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For this analysis, courts consider: "(1) whether [the class representatives] have interests antagonistic to the interests of other class members; and (2) whether the proposed class counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall*, 258 F.R.D. at 555. Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 594. "Minor differences in the interests of the class representatives and the class are not enough to defeat class certification under the adequacy requirement." *Equifax*, 999 F.3d at 1275. Potential variations in state law statutory claims do not rise to the level of "'fundamental' conflict 'going to the specific issues in controversy.'" *Id.*, at 1276. Plaintiffs have no conflicts with the Settlement Class and have participated actively in the case. *See* Joint Decl., at ¶ 71. Moreover, Class

Counsel have significant experience handling data privacy class actions like this one nationwide, including this district court. *See id*., at ¶¶ 35-61.

**5. Certification under Rule 23(b)(3) is appropriate**

Plaintiffs seek to certify a Class under Rule 23(b)(3), which has two components: predominance and superiority. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Equifax*, 999 F.3d at 1275. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

***a. Common Questions of law and Fact Predominate.***

In this case, the common factual and legal questions all cut to the issues at the heart of the litigation, satisfying predominance. *See Klay v. Humana, Inc.*, 382 F.2d 1241, 1264 (2004) ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test

will be met."). In a data breach, "[a]ll members of the class suffered the same alleged injury, exposure of their data …, stemming from the same conduct and the same event." *Equifax*, 2020 WL 256132, at *11. Further, "[t]he focus on a defendant's security measures in a data breach class action 'is the precise type of predominant question that makes class-wide adjudication worthwhile.'" *Id.* at *13 (quoting *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018)). Because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied for purposes of this settlement.

***b. A Class is the Superior Method of Adjudicating this Case***

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied for the purpose of this settlement. *See* Fed. R. Civ. P. 23(b)(3). A superiority analysis pursuant to Rule 23(b)(3) involves an examination of "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010) (internal quotation omitted). The focus is on the efficiency of the class method. *In re Equifax*, 2020 WL 256132 at *14. The Settlement Agreement (and the Claims Administrative Protocol attached thereto) provides Settlement Class Members

(whose identity can be ascertained by Defendant's own records) with well-defined procedures to obtain relief and to ensure due process, including the right of any Settlement Class Member to object or request exclusion. Moreover, there is no indication that Settlement Class Members have an interest in individual litigation or an incentive to pursue their claims individually, given the the resources required to prosecute such an action. *See Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017) (describing "the ways in which the high likelihood of a low per-class-member recovery militates in favor of class adjudication").

Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is likely too small, the technical issues involved are too complex, and the required expert testimony and document review are too costly. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not without the aid of competent counsel. Individual actions would needlessly delay resolution and lead to inconsistent rulings. Thus, the Court may certify the Settlement Class for settlement under Rule 23(b)(3).

**B. The Proposed Settlement Should Be Preliminary Approved**

Because it is fair, reasonable, and adequate, the Settlement Agreement warrants preliminary approval to provide notice to the Settlement Class pursuant to the factors set forth in Rule 23(e), which are whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was

negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. Pro 23(e)(2). These factors are complementary with the traditional factors set forth in *Bennett v. Behring Corp.*, 37 F.2d 982, 986 (11th Cir. 1984). *See Ponzio v. Pinon*, 87 F.4th 487, 495 (11th Cir. 2023). The *Bennett* Factors include:

> (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved.

*Ponzio*, 87 F.4th at 495. At bottom, preliminary approval is appropriate "where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (internal quotations omitted). The Settlement satisfies these factors; especially in light of the "strong judicial policy favoring settlement," *Ponzio*, 87 F.4th at 493-94, preliminary approval is appropriate here.

**1. Settlement Class Representatives and Class Counsel Have Adequately Represented the Class.**

Adequacy of representation is an issue traditionally considered in connection with class certification and involves two questions: "(1) whether the class representatives have interests antagonistic to the interests of other class members; and (2) whether the proposed class' counsel has the necessary

qualifications and experience to lead the litigation." *Columbus Drywall*, 258 F.R.D. at 555. As discussed above regarding the appropriateness of class certification, there is no conflict amongst the class members.

As to the the second prong, "the adequacy of class counsel is presumed" absent specific proof to the contrary. *Dusko v. Delta Air Lines, Inc.*, 2023 WL 12070227 at *3 (N.D. Ga. Oct. 5, 2023) (citation omitted). Here, Class Counsel have diligently pursued the claims as the scope of the case changed. Class Counsel's extensive experience in similar cases have enabled them to bring this case efficiently to a favorable resolution. Joint Decl. ¶¶ 35-61.

**2. The Settlement Was Negotiated at Arm's Length.**

First, arm's-length negotiations conducted by competent counsel with the assistance of a third-party mediator supports the finding that the settlement is fair. *Cole v. Stateserv Med. of Fla., LLC*, 2018 WL 3860263, at *2 (M.D. Fla. June 19, 2018). In this case, the Settlement was the result of intensive, arm's-length negotiations between attorneys experienced in data breach class action cases after a full day of mediation overseen by experienced class action mediator Bruce Friedman. *Sheffler v. Activate Healthcare, LLC*, 2024 WL 4008289, at *7 (S.D. Ind. Aug. 30, 2024) (granting approval of settlement that was "the product of a full day of arms'-length mediation with Mediator Friedman, a respected JAMS mediator with extensive experience in class actions and data breach litigation"). Settlement

discussions and exchange of information here occurred over several weeks. Joint Decl. ¶ 14. There is no evidence of collusion or illegality during settlement negotiations, and attorneys' fees and costs were not discussed until the Parties agreed to all other material Settlement terms. *Id.* ¶ 17. Class Counsel agree the Settlement is fair and reasonable and certify that it was reached at arm's-length. *Id.* ¶ 21.

**3. The Adequacy of Relief.**

Class Counsel believe the Settlement benefits are fair, reasonable, and adequate. *Id*. Despite the risks involved with further litigation, the Settlement Agreement provides signifcant benefits in the form of a $4,020,000 all cash, non-reversionary common fund settlement which allow class members to be compensated for the harm they suffered.

Moreover, there are no grounds to doubt the Settlement's fairness nor other apparent deficiencies, such as unduly preferred treatment of Plaintiffs or excessive attorney compensation. Under these circumstances, the Court may rely upon the judgment of experienced counsel. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co*., 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.").

Despite resolving at an early stage, Plaintiffs have sufficient information to evaluate the merits and negotiate a fair, adequate, and reasonable settlement. *See, e.g.*, *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) (affirming approval of

settlement with little discovery); *see also Home Depot*, 2016 WL 6902351, at *1, *7 (N.D. Ga. Aug. 23, 2016) (settlement approved at posture where motion to dismiss pending). The case has been thoroughly investigated by Counsel experienced in data breach litigation. Joint Decl. ¶ 10. Moreover, Counsel's informal exchange of discovery before and during mediation has ensured Class Counsel had sufficient information to fairly settle the case. *Id*. ¶ 14. That the Settlement benefits are fair, reasonable, and adequate is further confirmed by considering Rule 23(e)(2)(C)'s four enumerated factors below.

*a. The Costs, Risks, and Delay of Trial and Appeal*

Although Plaintiffs believe that the claims asserted in the Action are meritorious, and the Settlement Class would ultimately prevail at trial, continued litigation against Defendant poses significant risks that make any recovery for the Settlement Class uncertain. A data breach settlement can be "a prime example" of policy favoring settlement because "[a]bsent the settlement, the class action could have faced serious hurdles to recovery…" *Equifax,* 999 F.3d at 1257. Here too, Class Counsel had an opportunity to assess Defendant's potential legal arguments and defenses, including the lack of duty owed to Plaintiffs. *See, e.g., Equifax*, 2020 WL 256132, at *7 ("[Defendant] would likely renew its arguments under Georgia law that it has no legal duty to safeguard personal information, arguments that were

strengthened following the Supreme Court of Georgia's decisions in *Georgia Dep't of Labor v. McConnell*, 305 Ga. 812, 828 S.E.2d 352 (Ga. 2019).").

Rather than face this uncertainty, Settlement Class Members will receive their settlement benefits consistent with the harms they suffered as a result of the Data Incident in a streamlined claims process, and without the need to retain expert witnesses to support their documented claims. To continue litigation, the only certainties would be delay and increasing expense of continued litigation. This would impact not only the parties but also the Court. *See Exum v. Nat'l Tire & Battery*, 2020 WL 1670997, at *2 (S.D. Fla. Apr. 6, 2020) ("complex class action litigation …can occupy a court's dockets for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive") (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d at 493).

*b. The Effective Method of Distributing Relief and Processing Claims.*

Here, Settlement Class Members have the ability to claim (i) Reimbursement of Documented Losses up to $5,000 per individual, or (ii) a pro rata Alternative Cash Payment estimated at $75, and (iii) Medical Data Monitoring. Additional documentation will not be required to claim the Alternative Cash Payment of Medical Data Monitoring. S.A. § 76(a)-(c); *see also* S.A. Ex. 3. Accordingly, the Settlement is eminently reasonable, especially considering that it avoids the potential contingencies of continued litigation, and in light of the size of the breach itself.

Appointing the Settlement Administrator reinforces the efficacy of the relief process because a qualified entity will be designated to manage the process.

*c. The Reasonable Terms Relating to Attorneys' Fees*

Whether the attorneys' fees are reasonable on their own terms is a Rule 23(h) analysis. By contrast, under Rule 23(e), the analysis is not of the fee amount in a vacuum, but rather whether attorneys' fees impact the other settlement terms. Here, the Settlement Agreement allows Class Counsel to apply for fees of up to one-third of the non-reversionaly Settlement Fund, which is within the normal range of fee awards. *See Equifax*, 999 F.3d at 1281 (compiling cases including one stating that "average percentage award in the Eleventh Circuit is 'roughly one-third'") (citing *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012)); *Pinon v. Daimler AG*, 2021 WL 6285941, at *17 (N.D. Ga. Nov. 30, 2021) (noting that "[a]wards of up to 33% of the common fund are not uncommon in the Eleventh Circuit, and especially in cases where Class Counsel assume substantial risk by taking complex cases on a contingency basis") (citations omitted).

Additionally, the Settlement Agreement provides that the approval or denial of any motion for attorneys' fees is not a condition to this Settlement Agreement. S.A. ¶ 107. Indeed, the Parties negotiated attorneys' fees only after agreeing to the Settlement Benefits. *Id.*; Joint Decl. ¶ 25. At a minimum, for purposes of the Rule

23(e) analysis (and subject to the Court's consideration of a detailed fee application at a later time), the proposed award of attorneys' fees is also fair.

*d. The Agreements Identified Pursuant to Rule 23(e)(3)*

Rule 23(e)(3) states that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). There are no other agreements with Defendant other than the Agreement, which weighs in favor of a finding that the Agreement is fair and adequate.

**4. The Equitable Treatment of Settlement Class Members Relative to Each Other.**

The proposed Settlement treats all Settlement Class members equally. Accordingly, each is eligible to receive the same benefits pursuant to the harm they experienced. No Settlement Class members are favored over another and, therefore, the treatment is equitable.

**C. The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator**

Plaintiffs seek to be appointed as Class Representatives for the Class. As discussed above, Plaintiffs have cooperated with Class Counsel, provided informal discovery, and assisted in the preparation of the Complaint. Joint Decl. ¶ 60. Moreover, Plaintiffs are committed to continuing to vigorously prosecute this case, including overseeing the Notice Plan, and defending the Settlement Agreement against any objectors, all the way through the Court's final approval. Because they

are adequate representatives, the Court should appoint them as class representatives. Second, for the reasons previously discussed with respect to the adequacy of representation, the Court should designate Jeff Ostrow of Kopelowitz Ostrow P.A. and Casondra Turner of Milberg, PLLC as Class Counsel. Finally, the Parties have agreed that Kroll shall act as Settlement Administrator. Kroll has a long history of successful settlement administrations in class actions.

**D. The Proposed Form and Manner of Notice to the Class is Reasonable and Should be Approved**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Notice Plan set forth in the Settlement Agreement provides the best notice practicable under the circumstances. The Notice will be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be

identified with reasonable effort and through databases tracking nationwide addresses and address changes. *See* S.A. § 88. In addition, Kroll will administer the Settlement Website containing important and up-to-date information about the Settlement. *See* S.A. § 70.

Moreover, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed Notice Plan satisfies these requirements, as it notifies Settlement Class Members that Class Counsel will apply to the Court for attorneys' fees of no more than one-third of the Settlement Fund, plus reimbursement of reasonable litigation expenses, and the motion will be posted on the Settlement Website after filing. *See* S.A. § 106

The Notice Plan complies with Fed. R. Civ. P. 23 and due process because, among other things, it informs Settlement Class Members of: (1) the nature of the action; (2) the essential terms of the Settlement, including the definition of the Class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment if the Settlement Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that Settlement Class Members may make an appearance through counsel; (5) information regarding the payment of proposed Class Counsel fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, the Notice Plan and Notice are designed to be the best practicable under the circumstances, apprise Settlement Class Members of the pendency of the action, and give them an opportunity to object or exclude themselves from the Settlement. *See Agnone v. Camden Cnty.*, 2019 WL 1368634, at *9 (S.D. Ga. Mar. 26, 2019) (finding class notice mailed directly to settlement class members was the best practicable and satisfied concerns of due process). Thus, the Notice Plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

### E. The Court Should Approve a Settlement Schedule

Plaintiffs request that the Court set a settlement schedule for, *inter alia*, notice to Settlement Class Members; Settlement Class Members to object to or opt-out of the Settlement, and to make Settlement claims; and for the filing of papers in support of final approval and in support of attorneys' fees and expenses. A proposed schedule is included in the proposed Preliminary Approval Order (Ex. 4 to the S.A.). The Court will make its final determinations at the Final Approval Hearing.[1]

## <u>CONCLUSION</u>

Accordingly, Plaintiffs and Class Counsel respectfully ask the Court to enter an Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. A proposed order is attached as Exhibit 4 to the Settlement Agreement.

---

[1] A proposed Final Approval Order is attached as Exhibit 5 to the Settlement Agreement.

Respectfully submitted this 4th day of March, 2026.

*/s/ Casondra Turner*__________
Casondra Turner
(GA Bar No. 418426)
**MILBERG, PLLC**
260 Peachtree Street NW, Suite 2200
Atlanta, GA 30303
Telephone: (866) 252-0878
Fax: (771) 772-3086
cturner@milberg.com

Jeff Ostrow (*pro hac vice*)
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Boulevard, Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Email: ostrow@kolawyers.com

***Interim Co-Lead Counsel***

**CERTIFICATE OF COMPLIANCE WITH RULE 7.1(D)**

The undersigned hereby certifies that the foregoing brief has been prepared in Times New Roman 14-point font, which is approved by the Court in LR 5.1.

*/s/ Casondra Turner*__________
Casondra Turner

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 4, 2026, the foregoing was filed using CM/ECF, which will send electronic notice of same to all counsel of record.

*/s/ Casondra Turner*__________
Casondra Turner